**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

CLIFFORD B. MEACHAM; THEDRICK L.
EIGHMIE; and ALLEN G. SWEET, all
individually and on behalf of all other
persons similarly situated; and JAMES
R. QUINN, PhD**;** DEBORAH L. BUSH;
RAYMOND E. ADAMS; WALLACE
ARNOLD; WILLIAM F. CHABOT; ALLEN
E. CROMER; PAUL M. GUNDERSEN;
CLIFFORD J. LEVENDUSKY; BRUCE
E. PALMATIER;  NEIL R. PAREENE;
WILLIAM C. REYNHEER; JOHN K.
STANNARD; DAVID W. TOWNSEND;
and CARL T. WOODMAN,

                              Plaintiffs,


                v.                                          No. 97-CV-12
                                                                (DRH)
                                                          (Lead Case)
KNOLLS ATOMIC POWER LABORATORY,
aka KAPL, Inc.; LOCKHEED MARTIN,
INC.; and JOHN J. FREEH, individually and
as an employee of KAPL and Lockheed
Martin,

                              Defendants.

_____

JAMES R. QUINN, PhD,

                              Plaintiff,


                v.                                          No. 97-CV-45
                                                                (DRH)
                                                          (Member Case)
KNOLLS ATOMIC POWER LABORATORY,
Inc., aka KAPL, Inc.; LOCKHEED MARTIN,
INC.; and JOHN J. FREEH, individually and as
an employee of KAPL and Lockheed Martin,


                              Defendants.

_____

**APPEARANCES:**                                **OF COUNSEL:**

BERGER, DuCHARME, HARP &              JOHN B. DuCHARME, ESQ.
   CLARK, LLP                                      JOSEPH C. BERGER, ESQ.

Attorney for Plaintiffs
Suite 205
10 Maxwell Drive
Clifton Park, New York 12065

HOWE & RUSSELL, P.C.                           KEVIN K. RUSSELL, ESQ.
Attorney for Plaintiffs
Suite 300
7272 Wisconsin Avenue
Bethesda, Maryland 20814

NIXON PEABODY LLP                              MARGARET A. CLEMENS, ESQ.
Attorney for Defendants                        JOHN E. HIGGINS, ESQ.
1100 Clinton Square
Rochester, New York 14604

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER

Presently pending is the resolution of three issues, described below, remanded to

this Court by the Second Circuit Court of Appeals.  The parties have briefed the issues

and oral argument was heard on March 26, 2009.  For the reasons which follow, the Court

holds that defendants waived the affirmative defense at issue, that waiver is not excused,

and the Second Amended Judgment filed March 28, 2002 (Docket No. 214) is reinstated.


### I. Background

The extended procedural history of these cases[1] commenced on January 6, 1997

when an opt-in class of plaintiffs in the first action filed a complaint alleging disparate

treatment and disparate impact age discrimination under the Age Discrimination in

---

[1]The two actions were consolidated in an order filed February 20, 1998.  Docket No. 15.

Employment Act (ADEA), 29 U.S.C. § 621 et seq., and the New York Human Rights Law (HRL), N.Y. Exec. Law § 290 et seq.  Compl. (Docket No. 1).[2]  The actions arose from an involuntary reduction-in-force (IRIF) in 1996 at defendant Knolls Atomic Power Laboratory (KAPL)[3] which resulted in the termination of the employment of the twenty-eight plaintiffs. Following a bifurcated trial on liability and damages, the jury returned verdicts for defendants on plaintiffs' disparate treatment claims, for twenty-six plaintiffs on their disparate impact claims under both the ADEA and the HRL, and awarded plaintiffs[4] a total of $5,077,285.33 in damages. Docket Nos. 119, 124, 126, 128.  On December 11, 2000, judgment was entered on the verdicts.  Docket No. 133.  Defendants then moved for judgment as a matter of law or a new trial.  Docket Nos. 137, 196.  The motion was denied on February 13, 2002, but remittitur was granted reducing the total damages awarded (including interest) to $4,172,547.89.  Meacham v. Knolls Atomic Power Lab., 185 F. Supp. 2d 193 (N.D.N.Y. 2002).  Judgment, including an additional award for attorneys' fees and costs, was entered on March 28, 2002.  Second Am. J'ment (Docket No. 214).

Defendants appealed.  On August 23, 2004, the Second Circuit affirmed the judgment.  Meacham v. Knolls Atomic Power Lab., 381 F.3d 56 (2d Cir. 2004) (Meacham I).  Defendants petitioned the Supreme Court for a writ of certiorari.  While that petition was pending, the Supreme Court decided another case addressing issues raised by a

---

[2]All references to a docket are to that of the Lead Case.

[3]Also named as defendants were Lockheed Martin, Inc., KAPL's parent company, and John J. Freeh, KAPL's President and General Manager.

[4]Nine plaintiffs settled their claims and are no longer part of these actions.  See Docket Nos. 111-17, 208, 209.  Seventeen plaintiffs remain.

3

disparate impact claim under the ADEA.  See Smith v. City of Jackson, 544 U.S. 228 (2005).  The Supreme Court then vacated the Second Circuit's decision and remanded the case to the Second Circuit for further consideration in light of City of Jackson.  KAPL, Inc. v. Meacham, 125 S. Ct. 1731 (2005).  On remand, the Second Circuit vacated the judgment in favor of plaintiffs and, on August 14, 2006, directed that judgment be entered in favor of defendants.  Meacham v. Knolls Atomic Power Lab., 461 F.3d 134, 147 (2d Cir. 2006) (Meacham II).  Plaintiffs then petitioned the Supreme Court for a writ of certiorari. The Supreme Court granted the petition.  On June 19, 2008, the Supreme Court vacated Meacham II and remanded for further proceedings.  Meacham v. Knolls Atomic Power Lab., 128 S. Ct. 2395, 2406-07 (2008).

On remand, the Second Circuit directed the parties to submit briefs on the three questions set forth below.  Following submission of those briefs, the Second Circuit entered a summary order on January 7, 2009 remanding the case to this Court for further proceedings as follows:

> [T]he Supreme Court instructed us to determine "whether the outcome [of these cases] should be any different [from Meacham II in light of its holding]." Id. at 2406-07. Because this determination requires a factual inquiry that this Court lacks the institutional capacity to perform, we now remand to the [d]istrict [c]ourt . . . for consideration of the following issues:
>
> (1) Did the employer waive the RFOA affirmative defense by its conduct at the district court?
>
> (2) If so, was any such waiver excused as [] "the result of conflicting statements in our case law, for which [the employer] should not be penalized"?
>
> (3) If the employer did not waive the defense, or if any such waiver is excused:
>> (a) Should the employer prevail as a matter of law on the RFOA defense in light of the Supreme Court's decision?

4

(b) Should this case be resolved on the record created, or is a new trial warranted in light of the change in the relevant law?

Depending on the findings and rulings made in considering these questions, the district court may enter such orders and conduct such further proceedings (including discovery and trial) as the district court deems appropriate.

Meacham v. Knolls Atomic Power Lab., 305 Fed.Appx. 748, 749 (2d Cir. 2009) (Meacham III) (footnote and citation omitted); Docket No. 299.

No party requested discovery concerning any of these issues and all parties stated their view that the questions pending should be resolved on the existing record.  Order filed Jan. 15, 2009 (Docket No. 297) at 1.  For purposes of this decision, familiarity with the prior decisions of the various courts is assumed.

## II. Discussion

### 1. Did the employer waive the RFOA affirmative defense by its conduct at the district court?

The ADEA provides in pertinent part that an adverse employment action which otherwise has a disparate impact on older workers may nevertheless be excused if it "is based on reasonable factors other than age . . . ." 29 U.S.C. § 623(f)(1) ("RFOA").[5]  In Meacham II, the Second Circuit held that the burden of persuasion on RFOA was borne

---

[5]"[C]laims under the HRL are analyzed identically to claims under the ADEA [and] the outcome of an employment discrimination claim made pursuant to the HRL is the same as it is under the ADEA. . . ." Smith v. Xerox Corp., 196 F.3d 358, 363 (2d Cir. 1999) (quoted in Meacham II, 461 F.3d at 146).  In addition, the HRL itself contains an identical exception to that in the ADEA at issue here.  See N.Y. Exec. Law § 296(3-a)(d).  The discussion herein regarding plaintiffs' claims under the ADEA and its exception apply as well to their claims under the HRL and its identical exception.

by the employee and, since plaintiffs here failed to meet that burden, defendants were granted judgment as a matter of law.  461 F.3d at 144-46.  The Supreme Court held that the RFOA was an affirmative defense for which the employer bears the burden of persuasion.  128 S. Ct. at 2406-07.  The first question presented here is whether defendants waived their RFOA defense.

### a. Waiver[6]

Generally, waiver requires demonstration that a party intentionally relinquished a known right.  See Patterson v. Balsamico, 440 F.3d 104, 112 (2d Cir. 2006).  The party asserting waiver bears the burden of demonstrating the facts supporting such a claim. See Havoco of Am., Ltd. v. Hilco, Inc., 731 F.2d 1282, 1290 n.6 (7th Cir. 1984).  Thus, to establish that defendants waived their RFOA defense, plaintiffs must show that defendants had both knowledge of the existence of the RFOA defense and the intention to abandon it.  "Waiver may be established by affirmative conduct or by failure to act so as to evince an intent not to claim a purported advantage."  Tom Rice Buick-Pontiac, 551 F.3d at 157 (citation omitted). The waiver determination requires consideration of all

---

[6]Plaintiffs also utilize "forfeiture" and "abandonment" to characterize defendants' conduct.  Forfeiture "refers to a litigant's failure to make the timely assertion of a right." Schipani v. McLeod, 541 F.3d 158, 160 n.3 (2d Cir. 2008) (citation and internal quotation marks omitted); see also Patterson v. Balsamico, 440 F.3d 104, 112 (2d Cir. 2006).  On the other hand, abandonment and waiver appear to be interchangeable.  See Capital Ventures Int'l v. Republic of Argentina, 552 F.3d 289, 297 (2d Cir. 2009); Tom Rice Buick-Pontiac v. Gen. Motors Corp., 551 F.3d 149, 157 (2d Cir. 2008).  Because the concepts are so closely related and because the Second Circuit has framed the issue here as one of "waiver," the issue presented here will be considered only as one of waiver.  See Freytag v. C.I.R., 501 U.S. 868, 895 n.2 (1991) (Scalia, J., concurring) (noting that the Supreme Court had so often used "waive" and "forfeit" "interchangeably that it may be too late to introduce precision.").

circumstances relevant to the knowledge and intent of the party in question.  See In re Am. Express Merchants' Litig., 554 F.3d 300, 321 (2d Cir. 2009) (citation omitted); Frommert v. Conkright, 535 F.3d 111, 121 (2d Cir. 2008) (citation omitted); Dallio v. Spitzer, 343 F.3d 553, 563 (2d Cir. 2003) (noting that "the Supreme Court has repeatedly emphasized that [a claim of] . . . waiver . . . [requires examination of] the totality of facts and circumstances in a given case.") (internal quotations and citation omitted).


## I. Knowledge

Defendants' knowledge of the availability of the RFOA defense is evidenced by three circumstances.  First, the statutory exemption which afforded the defense was enacted in 1967 in the original ADEA and the RFOA language has remained in the statute unchanged since enactment.  See Age Discrimination in Employment Act of 1967, Pub. L. No. 90-202 § 4(f)(1), 29 U.S.C. § 623(f)(1).[7]  Thus, the statutory language affording the defense had been in effect for thirty-three years at the time of the trial herein.

Second, the trial here commenced on June 20, 2000.  Docket No. 79.  The case law in this circuit then recognized the RFOA exemption as a defense available to employers in ADEA cases.  For example, four years prior to the trial, the Second Circuit

---

[7]The ADEA was amended multiple times in other respects prior to 2000.  See, e.g., Deficit Reduction Act of 1984, Pub. L. No. 98-369 § 2301 (adding provisions regarding spouses); Omnibus Budget Reconciliation Act of 1986, Pub. L. No. 99-509 § 9201 (modifying provisions regarding employee pension benefit plans); An Act to Amend the Age Discrimination Act of 1967, Pub. L. No. 101-521 (adding clarifying language); Age Discrimination in Employment Amendments of 1996, Pub. L. No. 104-208 § 119 (clarifying inter alia the Act's applicability to law enforcement officers and fire fighters); Higher Education Amendments of 1998, Pub. L. No. 105-244 § 941 (adding provisions regarding early retirement incentive plans for tenured staff at higher education institutions).

found the RFOA exemption unavailable to an employer where age constituted the only

factor supporting the employer's mandatory retirement policy.  In so holding, the court

noted that

> The plain language of § 623(f)(1) makes it clear that an employer has a
> defense if his policy is based on reasonable factors "other than age," not if
> the policy is reasonably based on age. By its terms, the statute supplies an
> exception for "age-neutral" decisions based on other factors such as health
> or even education that might be correlated with age . . . -- not an exception
> for policies that explicitly but reasonably discriminate based on age. Our view
> has been adopted by at least two other courts of appeals. . . .

E.E.O.C. v. Johnson & Higgins, Inc., 91 F.3d 1529, 1541 (2d Cir. 1996) (internal citations

omitted) (emphasis in original).   Other decisions noted the exemption as well. See DiCola

v. SwissRe Holding (North Am.), Inc., 996 F.2d 30, 32-33 (2d Cir. 1993); Maresco v.

Evans Chemetics, 964 F.2d 106, 110, 113 (2d Cir. 1992) (holding that the ADEA does not

make it "unlawful . . . for an employer to discharge an employee based on reasonable

factors other than age" (citing the RFOA) and noting that cost and administrative

convenience may provide two such reasons).

Finally, but most significantly, defendants asserted the RFOA exemption as a

defense in their answer by pleading as their "Second Defense" that:

> [t]he employment of plaintiffs with KAPL was terminated for good cause and
> for reasonable factors other than their ages within the meaning of the ADEA
> . . . and all other laws invoked by plaintiffs herein.

Ans. (Docket No. 5) at 11.  There can be no doubt, therefore, and defendants do not deny,

that defendants fully knew of the RFOA exemption and that they possessed the right to

assert RFOA as a defense.

**ii. Intentional Relinquishment**

As to whether defendants intentionally relinquished that right, no evidence has been proffered that defendants ever affirmatively waived the defense.  This determination thus requires consideration of defendants' failure to pursue the defense.  Tom Rice Buick-Pontiac, 551 F.3d at 157-58.  There exists no dispute that having asserted the RFOA defense in their answer, defendants never again asserted that defense throughout the trial, in their appeal, in their petition for certiorari, or at any time before Meacham II.  See Defs. Mem. of Law (Docket No. 305) at 24.  Specifically, defendants moved for summary judgment before trial but did not mention the RFOA in their motion papers.  See Defs. Mem. of Law (Docket No. 36); Defs. Reply Mem. of Law (Docket No. 45).  Defendants also did not mention the defense in their trial memorandum filed the week before trial commenced.  Defs. Trial Mem. (Docket No. 66). Defendants did not mention RFOA in either their opening statement or their closing argument.  See, e.g., T. 4555-63[8] (closing argument). At the close of plaintiffs' direct case and again at the close of all the evidence, defendants moved for judgment as a matter of law (JMOL) pursuant to Fed. R. Civ. P. 50(a) but made no mention of RFOA in either motion.  T. 2450-87, 4413-18.

More significantly, defendants remained silent on the RFOA at each critical stage regarding the jury instructions and the special interrogatories in the verdict form.  Their proposed jury instructions contained no mention of RFOA.  Docket No. 67.  At the charge conference, defendants made no supplemental request for an RFOA instruction nor any objection to the omission from the charge of any instruction on that defense.  T. 4412-58.

---

[8]"T." followed by numbers refers to the pages of the trial transcript.

Defendants also made no request for inclusion of a special interrogatory on the defense in the verdict form.  Id; see also Jury Verdict (Docket No. 86).   The charge as given and special interrogatories as submitted contained no mention of RFOA, but defendants voiced no objection to either before a verdict was returned.  T. 4741.  It was incumbent upon defendants to assert their RFOA defense at this stage and their failure to do so, without more, generally constitutes a waiver of the defense.  See Patrolmen's Benevolent Ass'n of New York v. City of New York, 310 F.3d 43, 54-55 (2d Cir. 2002) (holding that errors in jury charge or verdict sheet which were unasserted at trial were waived and could be reviewed only for fundamental error).

In Meacham I, defendants failed to raise RFOA as an issue on the appeal.  Defs. Brief on Appeal (Docket No. 304, Ex. E); 2003 WL 24150644.  The RFOA issue was not addressed in Meacham I.  Defendants did not raise the RFOA issue in their petition for a writ of certiorari to the Supreme Court.  See Defs. Pet. for Writ of Cert., 2005 WL 92510.[9] While that petition was pending, the Supreme Court decided City of Jackson in which it noted that the RFOA provision in the ADEA "significantly narrows its coverage."  544 U.S. at 233.  The Supreme Court then vacated Meacham I and remanded for reconsideration in light of City of Jackson.  125 S. Ct. 1731.  On remand to the Second Circuit, defendants raised the RFOA issue for the first time five years after the trial.  See Defs. Brief on

---

[9]Defendants did employed the phrase "reasonable factors other than age" in their petition for the first time since their answer eight years earlier.  Defs. Pet., 2005 WL 92510, at *12-13.  The phrase in defendants' brief asserted a factual description of the four criteria utilized by KAPL on the matrices to select employees for the IRIF but did not raise any issue regarding the RFOA defense.  Id.  Defendants acknowledge that the first mention of the RFOA defense after their answer occurred in 2005 in Meacham II when the EEOC referred to the defense in its amicus curiae brief.  Defs. Mem. of Law (Docket No. 305) at 23-24.

10

Reconsideration, 2005 WL 2174605, at *16-21.  Thus, plaintiffs have demonstrated from the record in this case that after defendants filed their answer on February 28, 1997 through the trial in 2000 until proceedings in Meacham II in 2005, defendants never raised RFOA as a defense.

Moreover, defendants' decision to abandon their RFOA defense appears the product of a rational choice of strategies.  As Judge Pooler noted in Meacham II,

> [f]rom all that appears in the record before us, defendants may have made a strategic decision not to press the RFOA defense, believing that it would be easier to require plaintiffs to establish disparate impact under the [then applicable] analysis than for defendants themselves to prove a reasonable factor other than age. . . .

461 F.3d at 153 (Pooler, J., dissenting).  It appears that defendants chose to pursue a strategy which minimized their burden of proof and maximized that of plaintiffs.[10]   While the cost of that strategic choice was to forgo the RFOA defense, it constituted a rational choice given the competing considerations.  See also Blissett v. Coughlin, 66 F.3d 531, 539 (2d Cir. 1995) (finding a waiver of the qualified immunity affirmative defense and noting that "[w]hether this was a matter of strategy or mere inadvertence is of no consequence to our consideration.").

Finally, defendants also pleaded other defenses in their answer which they subsequently abandoned.  For example, in their Fourth and Fifth Defenses, defendants asserted challenges to the propriety of the class of plaintiffs and to the class representatives.  In their Seventh Defense, defendants contended that the actions were

---

Defendants defended the disparate impact claims by arguing, inter alia, that plaintiffs had failed to meet their burdens of identifying a facially neutral policy, statistical analysis to support their claims, and the existence of an equally effective alternative.

barred by the statute of limitations.  In their Eighth Defense, defendants asserted that plaintiffs failed to satisfy jurisdictional prerequisites.  In their Ninth and Tenth Defenses, defendants contended that defendants Lockheed and Freeh were not "employers."  In the Twelfth Defense, defendants asserted that any claims for personal injuries were barred by the New York State Workers' Compensation Law.  See Ans. at 11-12.  Defendants also never sought judgment on any of these defenses, never requested a determination of them by the jury or the Court, and thus waived each of these seven defenses as well.

For these reasons, plaintiffs have satisfied their burden of demonstrating that defendants' intentionally relinquished their right to assert the RFOA defense unless other reasons exist for defendants' failure to press and preserve the defense.


### iii. Defendants' Contentions

In response, defendants assert four principal arguments.  First, defendants contend that while they failed to articulate their RFOA defense using the precise words "reasonable factors other than age," they pressed and preserved the defense in functionally equivalent terms.   Analysis of this contention begins with the law applicable to an ADEA disparate impact claim at the time of trial in 2000.  To sustain a disparate impact claim at that time, the employee first was required to establish a prima facie case by specifying an employment practice which, although facially neutral, adversely impacted older employees.[11] Smith v. Xerox Corp., 196 F.3d 358, 367-68 (2d Cir. 1999).  The burden then

--------

[11]As to this first step, the jury found that plaintiffs had sustained their burden of proof (Jury Verdict at 11, question 6), defendants' post-trial motion for JMOL on this question was denied by this Court (185 F. Supp. 2d at 206-13), the Second Circuit affirmed in Meacham I (381 F.3d at 71-76), the issue was not reconsidered by the Second

shifted to the employer to offer a business necessity, or legitimate business justification, for the challenged employment practice. Id. (citation omitted).  If an employer offered such a business justification, the burden then returned to the employee to show that the employer's proffered reason was merely a pretext for discrimination.  Id. (citations omitted); see also Meacham I, 381 F.3d at 72 (affirming verdict under then-existing standard).

At the second stage, the employer bore the burden of articulating "a legitimate business justification," or "business necessity," for the challenged employment practice. Wards Cove Packing Co., Inc. v. Atonio, 490 U.S. 642, 658-60 (1989).[12]  This burden was one of production, not persuasion.  Id. at 659-60; Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 997 (1988); E.E.O.C. v. Joint Apprenticeship Comm., 186 F.3d 110, 120 (2d Cir.1999).  An employer met this minimal burden by articulating a business necessity or reason for the employment practice. See Watson, 487 U.S. at 997-98.  If an employer articulated a legitimate business justification, the burden then shifted back to the employee to prove that "the employer's proffered explanation was merely a pretext for

_____

Circuit in Meacham II, and the Second Circuit made no mention of this issue in its remand order in Meacham III.  Accordingly, the sufficiency of plaintiffs' evidence on this issue is not presently pending before the Court and will not be further addressed.

[12]Cases in this and other circuits had also described the employer's burden as one to produce "legitimate nondiscriminatory reasons" other than age.  See, e.g., E.E.O.C. v. Joint Apprenticeship Comm., 186 F.3d 110, 121 (2d Cir. 1999); Lieberman v. Gant, 630 F.2d 60, 65 (2d Cir. 1980).  Defendants here pleaded a separate defense using this language, see Ans. at 12 ("Eleventh Defense"); see also id. at 11 ("Third Defense"), and frequently employed that phrase during trial.  See, e.g., Defs. Closing Argument, T. 4554-57, 4561-64.  Thus, while close in concept to "reasonable factors other than age," the use of "legitimate nondiscriminatory reasons other than age" clearly was intended to, and did, raise an issue other than the RFOA defense.

13

discrimination." Xerox Corp., 196 F.3d at 365 citation omitted).   The employee could

satisfy this burden by evidence "that another practice would achieve the same result at

comparable cost without causing a disparate impact on the protected group. . . ." Id. (citing

Wards Cove, 490 U.S. at 660-61.[13]

Thus, throughout the pretrial, trial, post-trial, and appellate proceedings until City of

Jackson in 2005, defendants used "business necessity," "business justification,"

"legitimate business justification," and similar phrases in seeking to meet their burden at

the second stage and in challenging plaintiffs' evidence at the third stage.  Defendants

offered substantial evidence that KAPL utilized matrices to select those whose

employment would be terminated in the IRIF and that the matrices assessed employees

based on four criteria – performance, flexibility, criticality, and length of service.

Defendants contend that the use of these phrases and the introduction of this evidence

regarding the matrices sufficed to preserve the RFOA defense asserted in their answer.[14]

This argument fails for several reasons.  First, "business necessity" and "business

justification" were not sufficiently equivalent to RFOA.  "Business necessity" and "business

justification" required an employer to offer non-age reasons for the employment action at

_____

[13]As discussed further infra, the Supreme Court's decisions in Meacham and City of
Jackson removed an employer's burden of production at the second stage, precluded an
employee from demonstrating discrimination at the third stage by evidence of other means
to achieve the same end without a discriminatory impact, and placed the burden of proof
on the RFOA defense on the employer.

[14]The Supreme Court noted that the multiple shifts of the burdens of proof and
production under the law in effect at the time of trial were "a wasteful and confusing
structure of proof."  Meacham, 128 S. Ct. at 2405.  Notwithstanding, if defendants had
pressed their RFOA defense, it would have been a simple matter to add an instruction on
the defense and to insert after Question 8 on the verdict form an additional question on
the defense.

issue, not reasons why an employee was selected for the adverse action.  Thus,

defendants here asserted as their "business necessity" the budgetary need to reduce their

workforce while still retaining employees with skills critical to the performance of KAPL's

functions.  See, e.g., Defs. Closing Argument, T. 4516 (arguing that defendants satisfied

burden of articulating business necessity through proof of need for IRIF); Defs. Post-Trial

Mem. of Law (Docket No. 137) at 18 (same); see also Meacham, 185 F. Supp. 2d at 213

(identifying same as defendants' articulated "business necessity"); Meacham I, 381 F.3d at

74-75 (same).[15]  On the other hand, the RFOA defense required proof of the use of non-

age reasons for the selection of the plaintiffs for the IRIF.  Since the trial, defendants have

identified such reasons as those criteria included on the matrices, particularly flexibility

and criticality. See, e.g., Meacham II, 461 F.3d at 143-44.  Therefore, defendants'

references at trial to "business necessity" and "business justification" did not suffice to

press or preserve an RFOA defense.

Second, defendants never indicated in any way that their RFOA defense was

subsumed in the assertions of "business necessity" and "business justification."

Defendants never explicitly stated that they were including RFOA in those assertions.

Defendants have not cited any instance in the trial record where they referred,

inadvertently or otherwise, to RFOA rather than to "business necessity" or "business

justification."  Thus, nothing in the record indicates that defendants ever subjectively

intended that their references to "business necessity" and "business justification" be taken

---

[15]At other times, defendants argued that the factors included on the matrices
constituted "legitimate nondiscriminatory reasons" for the selection of plaintiffs in the IRIF.
See, e.g., Defs. Closing Argument, T. 4554-57, 4561-64.

as including their RFOA defense.

Third, references to "business necessity" and "business justification" were insufficient to place either plaintiffs or the Court on notice that defendants were pressing and preserving their RFOA defense.  Defendants never once used the term of art "reasonable factors other than age" after pleading it in their answer as would have given notice that they continued to assert the defense.   Neither "business necessity," "business justification," evidence, nor argument concerning the four factors on the matrices reasonably served to give such notice.  There is no evidence in the record that either plaintiffs or the Court otherwise perceived that defendants were pressing that defense.  Additionally, both plaintiffs' counsel and the Court have affirmatively stated that they were unaware that defendants were pressing the defense.  As here, defendants commonly plead numerous defenses in their answers which they abandon at various stages prior to submission of a case to a jury.  A defendant's failure to seek judgment as a matter of law on a pleaded defense, whether affirmative or not, or to seek a jury instruction on the defense in words reasonably calculated to advise that the defense is an issue for resolution generally constitutes abandonment of the defense.  See McCardle v. Haddad, 131 F.3d 43, 51-52 (2d Cir. 1997) (finding waiver of a defense where the defendant failed to refer to the defense in a pretrial memorandum, made no motion for summary judgment on that ground, and made no mention of the defense in proposed jury instructions); Walsh v. Mejias, 837 F.2d 789, 799-800 (7th Cir. 1988) (finding waiver of a defense where the defense was raised for the first time on the second appeal).  Defendants' failure to press the RFOA defense in words reasonably understood as asserting that defense rather than another cannot survive a claim of waiver.

16

Defendants next contend that any relinquishment of the RFOA defense was not intentional because defendants were unaware that they bore the burden of proof on that defense.  Prior to Meacham II, no case in the Second Circuit had held that the employer bore the burden of proof and persuasion on the RFOA defense or, indeed, ever addressed the burden issue at all. Defendants further note that in a 1996 decision, the Second Circuit cited "with approval" an Eleventh Circuit decision holding that the employee bore the burden of proof on the RFOA defense.  See Johnson & Higgins, 91 F.3d at 1541 (citing Iervolino v. Delta Airlines, Inc., 796 F.2d 1408, 1414-19 (11th Cir. 1986)).  Although Johnson & Higgins cited Iervolino with approval, the citation supported a different proposition of law and Johnson & Higgins was silent on the issue of which party bore the burden of proof.  Id.  Thus, at the time of trial, no decision in the Second Circuit or the Supreme Court had determined which party bore the burden of proof on the RFOA defense. Having pleaded the RFOA as a defense, defendants assumed the burden of pressing the defense at trial or risking waiver of the defense.

Moreover, the absence of clearly established law on a particular issue does not excuse defendants' failure to press their defense here.[16]  First, defendants asserted RFOA as an affirmative defense in their answer.  Ans. at 11.  It was asserted among eleven other defenses.  Several of those were clearly affirmative defenses, including mitigation of damages (Sixth Defense), see Federal Ins. Co. v. Sabine Towing & Transp. Co., Inc., 783 F.2d 347, 350-51 (2d Cir. 1986); and statute of limitations (Seventh Defense), see Bano v. Union Carbide Corp., 361 F.3d 696, 710 (2d Cir. 2004).  Defendants recognized the need

---

[16]See also subsection 2 infra.

to plead the RFOA defense and pleaded it as an affirmative defense.  See Meacham II, 461 F.3d at 152 (Pooler, J., dissenting) ("Defendants . . . included RFOA as an affirmative defense to liability in their answer."); see also Transcript of Oral Argument before S. Ct. (Docket No. 304-7) at 6.[17]  Prior to and at the time of trial, then, defendants evidenced no confusion or uncertainty over who bore the burden of proof on their RFOA defense and never raised the issue until the second appeal.

Furthermore, the fact that the Second Circuit in Meacham II allocated the burden of proof to the employee rather than to the employer as subsequently held by the Supreme Court affords defendants no relief.  Meacham II came five years after the trial and after defendants' silence on the defense through the trial and the first appeal.  There exists no evidence to suggest that defendants were uncertain or confused about the defense at the time of trial.  The fact that issues arose concerning the defense, never previously raised by defendants here, as the result of City of Jackson years after the trial and first appeal cannot support a claim that defendants were unaware or uncertain about the availability of the RFOA defense at the time of trial.  See DeWeerth v. Baldinger, 38 F.3d 1266, 1272-73 (2d Cir. 1994) (holding that change in law after entry of judgment did not warrant re-opening case); Picco v. Global Marine Drilling Co., 900 F.2d 846, 851 (5th Cir. 1990) (holding that a subsequent change by the Supreme Court in the applicable rule of law did

---

[17]     JUSTICE STEVENS: But did you plead this as an affirmative defense?  Did you plead it as an affirmative defense?

MR. WAXMAN [counsel for defendants]: We pleaded it as a – I can't bring the complaint to mind, but we pleaded it as a separately specified defense, yes.  We said, in our answer to the complaint, we said this is a reasonable factor other than age."

Transcript at 49.

18

not warrant re-opening case); <u>Travelers Indem. Co. v. Sarkisian</u>, 794 F.2d 754, 757 (2d Cir. 1986).

Finally, defendants contend that by failing themselves to raise at trial defendants' waiver of the RFOA defense, plaintiffs waived any claim of waiver by defendants.  This unusual contention appears to bear both on whether defendants knew of their right to the RFOA defense and whether they intentionally relinquished that right.  The contention fails as to both.  As to defendants' knowledge, for the reasons discussed <u>supra</u>, defendants clearly knew of their right to the defense.  As to intentional relinquishment, the issue requires examination of defendants' conduct, not plaintiffs'.  Defendants have offered no authority requiring plaintiffs to assert defendants' waiver in the district court to enforce defendants' waiver at this stage.  Whether defendants waived the RFOA defense depends only on their conduct and, if waiver is found, it cannot be vitiated by plaintiffs' failure to assert that waiver at any earlier stage of the proceedings.

Thus, defendants had actual knowledge of their right to assert the RFOA defense and did so in their answer.  Defendants thereafter failed to mention the defense again until the second appeal.  In particular, they failed to seek judgment on the defense, request a jury instruction or special interrogatory on the defense, or object to the charge or verdict form for omitting any instruction or question on the defense.  Nothing impeded defendants from pressing or preserving the defense.  Therefore, defendants' choice to abandon the defense at trial was fully intentional.  Accordingly, defendants waived the RFOA affirmative defense by their conduct at the district court.

### 2. If so, was any such waiver excused as "the result of conflicting statements in our case law, for which [the employer] should not be penalized"?

In stating this question in <u>Meacham III</u>, the Second Circuit specifically referred to its decision in <u>In re Salomon Analyst Metromedia Litig.</u>, 544 F.3d 474, 485 (2d Cir. 2008). <u>See</u> 305 Fed.Appx. at 749. In that case, investors sued a bank and others alleging fraud in analyst reports concerning certain stock transactions. The district court granted class certification and defendants filed an interlocutory appeal. In reversing the district court's holding, the Second Circuit noted that defendants had failed to offer evidence rebutting an essential presumption in the proceedings before the district court but declined to find that defendants were precluded by waiver from offering such evidence on remand. The court stated that

> defendants' error may have been the result of conflicting statements in our case law, for which they should not be penalized. Based on the state of the law at the time, defendants could not have been expected to have known at that stage of the proceedings that (1) they were entitled to a full rebuttal as a matter of law, and (2) . . . they bore the burden of [proof]. . . .

<u>Id.</u> at 485. Thus, as set forth in <u>Salomon Analyst</u> and in the Second Circuit's second question on remand, excusal of defendants' waiver presents a threshold question whether there existed conflicting statements in Second Circuit case law at the time of trial regarding the burden of proof on their RFOA defense.

As of the time of trial in June and July, 2000, no decision in the Second Circuit had discussed the burden of proof on the RFOA defense, directly or otherwise. Decisions noted the existence of the RFOA exception. <u>See, e.g.</u>, <u>Johnson & Higgins</u>, 91 F.3d at 1541 (noting that the RFOA provision created a "broad" exception to employer liability under the ADEA but not addressing the burden of proof on the defense); <u>DiCola</u>, 995 F.2d

20

at 32; Maresco, 964 F.2d at 113. Defendants have cited no decisions in the Second Circuit prior to the trial which could reasonably be construed as in conflict over the RFOA exception or the burden of proof on that defense.

Absent demonstration of such conflicting statements, no basis is presented to excuse defendants' waiver.  Defendants contend, however, that any waiver should be excused either because a conflict existed among the circuits as to the burden of proof or because there was uncertainty as to the burden of proof.  First, these contentions exceed the question presented by the Second Circuit on this remand.  That question asks only whether any waiver should be excused "as 'the result of conflicting statements in our case law for which [the employer] should not be penalized'?"  Meacham III, 305 Fed.Appx. at 749 (emphasis added).  The scope of the remand is thus limited to (a) conflicting statements and (b) in the Second Circuit case law.  Defendants' contentions here exceed the scope of the remand order.  See Ginett v. Computer Task Group, Inc., 11 F.3d 359, 361(2d Cir. 1993) (holding that '[t]he district court's actions on remand should not be inconsistent with either the express terms or the spirit of the mandate.") (citing Quern v. Jordan, 440 U.S. 332, 347 n.18 (1979)).

As to their merits, defendants' contentions would require extension of the narrow exception recognized in Salomon Analyst to significantly broader circumstances.  Parties are obliged to follow the law as determined by the circuit in which a case is brought.  See Hart v. Massanari, 266 F.3d 1155, 1171 (9th Cir. 2001) (citations omitted) (holding that "[c]ircuit law . . . binds all courts within a particular circuit . . . .").  The exception for conflicting statements within a circuit rests on principles of fairness in that a party should not be penalized if the statements of a court reasonably cause confusion to the prejudice

of the party.  See Salomon Analyst, 544 F.3d at 485.  No such concerns for fairness exist in the more frequently encountered circumstance of conflicts between circuits.  A party is there bound by the determination of the law in the circuit where the case is brought.  See Hart, 266 F.3d at 1171.

Where, as here, there existed no controlling precedent in the circuit, the considerations remain the same.  The absence of controlling authority in the circuit on the precise issue presented  here, –  the burden of proof on the RFOA defense –  affords no excuse for failing to raise and preserve the issue in the district court, for it remains the obligation of a party to raise in the district court whatever issues that party may wish to preserve for appeal.  See In re Klein Sleep Prods., Inc., 78 F.3d 18, 29 (2d Cir. 1996) (holding that by failing to press its claims in the district court, a party failed to preserve those claims for review by either the district court or the Second Circuit); Blissett, 66 F.3d at 539.  The fact that the issue was recognized by a party only after trial or that a post-trial appellate court ruling may have alerted a party to an additional argument cannot excuse silence on that issue at trial lest no judgment ever be final.  See Holzsager, 646 F.2d at 796 (holding that a post-trial change in the law may excuse waiver only where a new defense is created or a legal impediment to asserting a defense is removed);[18] see also Paese v. Hartford Life & Accident Ins. Co., 449 F.3d 435, 447 n. 4 (2d Cir.2006) (excusing waiver where defendant could not have known of an affirmative defense before it was announced in appellate decision);  Bennett v. City of Holyoke, 362 F.3d 1, 7 (1st Cir. 2004) (holding that a waiver may be excused "only when the defense, if timely asserted, would

_____

[18]There has been presented no claim or evidence that either circumstance was present here.

22

have been futile under binding precedent" and citing <u>Holzsager</u>, 646 F.2d at 794-96).

Thus, no conflicting statements in Second Circuit law concerning the RFOA defense existed at the time of the trial here.  Neither conflicts among circuit courts, silence on the issue in the Second Circuit at the time of trial, nor decisions on the issue by the Second Circuit or the Supreme Court years after the trial excuse defendants' waiver under the <u>Salomon Analyst</u> exception to the waiver rule.  Accordingly, defendants' waiver is not excused.


**3. If the employer did not waive the defense, or if any such waiver is excused:**

> **(a) Should the employer prevail as a matter of law on the RFOA defense in light of the Supreme Court's decision?**

> **(b) Should this case be resolved on the record created, or is a new trial warranted in light of the change in the relevant law?**

According to the remand order in <u>Meacham III</u>, the third question need be answered only if no waiver is found or if any such waiver is excused.  Having concluded that defendants waived their RFOA defense and that their waiver is not excused, the third question need not be addressed.

### III. Conclusion

For the reasons stated herein, it is hereby **ORDERED** that the Second Amended

Judgment (Docket No. 214) be **REINSTATED**.[19]

**IT IS SO ORDERED**

DATED:  April 15, 2009
          Albany, New York

_____
David R. Homer
U.S. Magistrate Judge

---

[19]It is unclear at this stage whether the Second Amended Judgment remains effective or should be reinstated.  That judgment was affirmed in Meacham I, 381 F.3d at 79. That affirmance was vacated by the Supermen Court and remanded to the Second Circuit for reconsideration.  KAPL, Inc. v. Meacham, 544 U.S. at 957.  On reconsideration, the Second Circuit vacated the judgment and remanded with instructions to enter judgment for defendants.  Meacham II, 461 F.3d at 147.  Plaintiffs petitioned for a writ of certoriari in the Supreme Court before the mandate from Meacham II was ever received in the district court and the Second Amended Judgement was never vacated.  The Supreme Court vacated Meacham II and remanded the case to the Second Circuit for further consideration.  Meacham, 128 S. Ct. at 2407.   The remand order in Meacham III authorized this Court to "enter such orders . . . as the district court deems appropriate." 305 Fed.Appx.  at 749.  It appears from this history that the Second Amended Judgment remains in effect since the decision in Meacham II vacating it has itself been vacated. Nevertheless, to insure procedural regularity and the existence of a final judgment, reinstatement of that judgment is ordered here.